IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


MICHELLE LEA LANE,

                    Plaintiff,

vs.                                    Case No. 10-1080-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

                    Defendant.


MEMORANDUM AND ORDER

     This is an action reviewing the final decision of the

Commissioner of Social Security denying the plaintiff disability

insurance benefits.  The matter has been fully briefed by the

parties.

## I.  General legal standards

     The court's standard of review is set forth in 42 U.S.C.

§ 405(g), which provides that "the findings of the Commissioner

as to any fact, if supported by substantial evidence, shall be

conclusive."  The court should review the Commissioner's decision

to determine only whether the decision was supported by

substantial evidence and whether the Commissioner applied the

correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984

(10th Cir. 1994).  Substantial evidence requires more than a

scintilla, but less than a preponderance, and is satisfied by

such evidence that a reasonable mind might accept to support the

1

conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy.
Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On November 4, 2009, administrative law judge (ALJ) Michael R. Dayton issued his decision (R. at 10-19). Plaintiff alleges that she has been disabled since June 1, 2004 (R. at 10). Plaintiff is insured for disability insurance benefits through December 31, 2008 (R. at 12). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability (R. at 12). At step two, the ALJ found that plaintiff had the following severe

impairments: hepatitis C/chronic liver disease, irritable bowel syndrome, major depression, anxiety disorder and drug and alcohol abuse (R. at 12). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 12-14). After determining plaintiff's RFC (R. at 14), the ALJ found at step four that plaintiff is unable to perform any past relevant work (R. at 17). At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 18). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 19).

**III. Did the ALJ err in his evaluation of the medical opinion evidence regarding listed impairment 12.04?**

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant. The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports,

not the other way around. Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations. If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources. Robinson, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion. Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004). A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his/her decision for the weight he/she ultimately assigns the opinion. If the ALJ rejects the opinion completely, he/she must then give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.

Treating source opinions on issues that are reserved to the Commissioner[1] should be carefully considered and must never be ignored, but they are never entitled to controlling weight or special significance. Giving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an

---

[1]Issues reserved to the Commissioner include: (1) whether an claimant's impairment meets or is equivalent in severity to a listed impairment, (2) a claimant's RFC, (3) whether a claimant can perform past relevant work, and (4) whether a claimant is disabled. SSR 96-5p, 1996 WL 374183 at *2.

individual is disabled.  SSR 96-5p, 1996 WL 374183 at *2-3.

Plaintiff contends that the ALJ erred by rejecting the medical opinion evidence of Dr. Simmonds that plaintiff's impairment met listed impairment 12.04.  The ALJ found that plaintiff's impairments did not meet or equal listed impairment 12.04 (affective disorders).[2]  More specifically, the ALJ found that plaintiff's impairments do not meet either the "B" criteria or the "C" criteria of 12.04 (R. at 13).  The "B" criteria of 12.04 are as follows:

> B. Resulting in at least two of the following:
>
> 1. Marked restriction of activities of daily living; or
>
> 2. Marked difficulties in maintaining social functioning; or
>
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
>
> 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1 (2010 at 507-508).

The medical records indicate that plaintiff was first seen by Dr. Simmonds on December 9, 2008 (R. at 281).  Plaintiff was insured for disability insurance benefits through December 31, 2008 (R. at 12).  Plaintiff continued to be seen by Dr. Simmonds

---

[2]Listed impairment 12.04 is met when both the "A" and the "B" criteria are satisfied, **or** when the requirements of the "C" criteria are satisfied.  20 C.F.R. Pt. 404, Subpt. P, App. 1 (2010 at 507, emphasis added).

or other professionals at Wichita Psychiatric Consultants in 2009 (R. at 283, 359-363, 465).

Dr. Simmonds indicated on April 23, 2009 that plaintiff's impairments met the "A" and the "B" criteria of 12.04 (R. at 356-358). In regards to the "B" criteria, Dr. Simmonds opined that plaintiff had "marked" restrictions in activities of daily living, "marked" difficulties in maintaining social functioning, "often" had deficiencies of concentration, persistence or pace, and had "repeated" episodes of deterioration or decompensation in work or work-like settings (R. at 358).[3]

The ALJ discussed the opinions of Dr. Simmonds as follows:

> A review of the evidence notes that the claimant began treatment for depression with Dr. Simmonds on December 9, 2008, days before her date last insured. On that date he indicated that her global assessment of functioning was 50. However, it had been 63 for the past year (exhibit 2F). Dr. Simmonds went on to complete a mental assessment dated April 23, 2009 at the request of counsel. This assessment noted affective disorders with marked limitations in activities of daily living, marked difficulties in maintaining social functioning, often deficiencies of concentration, persistence or pace and repeated episodes of deterioration or decompensation in work or work-like settings (exhibit 10F). However, this assessment is given little weight as it is not consistent with the medical records for the period at issue. It is also after the date last insured. Dr. Simmonds saw the claimant once prior to the date last insured with an indication that the claimant's GAF

[3]Dr. Simmonds did not address the "C" criteria of 12.04.

9

for the past year was 63. The undersigned
notes that DSM-IV, American Psychiatric
Association Diagnostic and Statistical Manual
of Mental Disorders indicates that global
assessment of functioning scores ranging from
61 to 70 indicate only mild symptoms while
generally functioning pretty well.

.........

The claimant did not seek mental health
treatment until December 9, 2008. Dr.
Simmonds reported that for the year prior to
treatment the claimant had a GAF of 63
reflective of mild limitations. He submitted
treatment notes for the one contact on
December 9, 2008 and then completed a mental
residual functional assessment noting marked
limitation of function. As noted, this is
also given little weight as it is after the
date last insured and not supported in a
review of the medical evidence for the period
at issue.

(R. at 15-16, 16-17).

The ALJ agreed with the state agency assessment regarding

plaintiff's mental limitations (R. at 17).  The state agency

assessment, prepared by Dr. Schulman and dated January 30, 2009,

found that plaintiff only had "mild" restrictions in activities

of daily living, "moderate" difficulties in maintaining social

functioning, "moderate" difficulties in maintaining

concentration, persistence or pace, and no episodes of

decompensation (R. at 335, 345).[4]  Dr. Jessop affirmed those

findings on April 14, 2009 (R. at 355).

---

[4]Dr. Schulman also indicated that plaintiff's impairments
did not meet the "C" criteria (R. at 346).

The ALJ gave little weight to the opinions of Dr. Simmonds because his opinions were not consistent with the medical records for the period at issue (i.e., on or before December 31, 2008), and because the opinion was provided on April 23, 2009, after the date last insured. The ALJ also mentioned that Dr. Simmonds only saw her one time before the date last insured. Finally, the ALJ noted that Dr. Simmonds found that plaintiff had a GAF score of 63 during some of the period at issue; the ALJ noted that such a GAF score reflects only "mild" limitations. The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence. See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). The court can only review the sufficiency of the evidence. Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo. Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).

The ALJ discounted the opinions of Dr. Simmonds because they were not consistent with the medical records for the period at issue. The state agency assessment of Dr. Schulman and Dr. Jessop reviewed and discussed plaintiff's medical records, including the treatment records from Dr. Simmond's office from December 9, 2008 and January 8, 2009. The opinion of Dr. Schulman and Dr. Jessop was that the treatment records reviewed did not establish that plaintiff's impairment met a listed impairment (R. at 347). Thus, the finding of the ALJ that the assessment by Dr. Simmonds is not consistent with the medical records on or before December 31, 2008 is supported by the opinions of Dr. Schulman and Dr. Jessop.

The ALJ also indicated that the opinion of Dr. Simmonds that plaintiff's impairment met listed impairment 12.04 came after the date last insured. Medical evidence of a claimant's condition subsequent to the expiration of his/her insured status is pertinent or relevant evidence which may disclose the severity and continuity of impairments existing before the expiration of the claimant's insured status. Baca v. Dep't of Health & Human Services, 5 F.3d 476, 479 (10th Cir. 1993); Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984). However, it is for the ALJ, as the trier of fact, to determine what weight should be accorded to medical opinion evidence subsequent to the expiration of a claimant's insured status. The ALJ considered the April 23, 2009

12

opinion of Dr. Simmonds, but discounted it not only on the basis that it was made after the date last insured, but also because the opinions of Dr. Simmonds were not consistent with the medical records for the period at issue (R. at 17), a finding supported by the opinions of Dr. Schulman and Dr. Jessop.

The ALJ also relied on the fact that Dr. Simmonds only saw her on one occasion before the date last expired. Although the ALJ did not mention subsequent treatment by Dr. Simmonds, he made findings consistent with the state agency assessment; that assessment specifically looked at treatment records through January 2009 when setting forth its opinion that plaintiff's impairment did not meet a listed impairment (R. at 335). The fact that Dr. Simmonds only saw plaintiff on one occasion before the expiration of plaintiff's insured status is certainly a relevant factor that the ALJ can consider, along with other evidence, in deciding what weight to give to the opinions of Dr. Simmonds.

Finally, the ALJ also mentioned that the report of Dr. Simmonds indicated that plaintiff's GAF "had been 63 for the past year" (R. at 15), and that "for the year prior to treatment the claimant had a GAF of 63" (R. at 17). In fact, Dr. Simmonds stated on December 9, 2008 that plaintiff's GAF on that date was 50, and that the highest GAF in the last year was 63 (R. at 281). On January 8, 2009, the treatment records indicate that

plaintiff's current GAF was 50 (R. at 283).  Treatment notes from May 12, 2009 indicate a current GAF of 55 and also indicate the highest GAF for the past year was 55 (R. at 361-362).  Finally, treatment notes on June 17, 2009 indicate a current GAF of 50 and also state that plaintiff's highest GAF for the past year was 55 (R. at 359).  Thus, treatment notes indicate that plaintiff's GAF from the beginning of 2008 through June 17, 2009 varied from a low of 50 to a high of 63.[5]

Admittedly, the ALJ erroneously found that the report of Dr.

---

[5]GAF (global assessment of functioning) scores can be found in the <u>Diagnostic and Statistical Manual of Mental Disorders</u>. The scores in this case represent the following:

> 61-70: **Some mild symptoms** (e.g., depressed mood and mild insomnia) **OR some difficulty in social, occupational, or school functioning...but generally functioning pretty well, has some meaningful interpersonal relationships** (emphasis in original).

> 51-60: **Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational or school functioning** (e.g., few friends, conflicts with peers or co-workers).

> 41-50: **Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting), **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job) (emphasis in original).

<u>Diagnostic and Statistical Manual of Mental Disorders</u> (DSM-IV-TR) (4th ed., text revision, American Psychiatric Association 2000 at 34) (emphasis in original).

Simmonds indicated that plaintiff had a GAF of 63 for the past year (2008) when Dr. Simmonds in fact stated that the highest GAF that plaintiff had for the past year was 63. The treatment record shows that plaintiff's GAF varied from 50-63 between the beginning of 2008 through June 17, 2009. As the ALJ noted, a GAF of 63 does indicate only "mild" symptoms for at least a portion of 2008.

Because a GAF score may not relate to a claimant's ability to work, the score, standing alone, without further explanation, does not establish whether or not plaintiff's impairment severely interferes with an ability to perform basic work activities. See Eden v. Barnhart, 109 Fed. Appx. 311, 314 (10th Cir. Sept. 15, 2004). GAF scores are not considered absolute determinants of whether or not a claimant is disabled. Heinritz v. Barnhart, 191 Fed. Appx. 718, 722 (10th Cir. Aug. 10, 2006).

The ALJ did not rely solely on the GAF scores, but gave a number of reasons for discounting the opinions of Dr. Simmonds, including the fact that the ALJ greater weight to the opinions of Dr. Schulman and Dr. Jessop, who, after reviewing the medical records, including those of Dr. Simmonds (which listed the GAF scores) found that plaintiff's impairments did not meet a listed impairment. Furthermore, the treatment records indicate that plaintiff's GAF fluctuated between 50 and 63 from the beginning of 2008 through June 17, 2009. On the specific facts of this

case, and in light of the ALJ's reliance on the opinions of Dr. Schulman and Dr. Jessop, the court finds that the ALJ's statement that plaintiff had a GAF score of 63 for the past year when Dr. Simmonds in fact stated that the highest GAF that plaintiff had for the past year was 63, of itself, does not provide a sufficient basis to remand this case for further hearing.

Plaintiff also quotes portions of SSR 83-20 in her brief (Doc. 10 at 5-7). SSR 83-20 governs the determination of the onset of a disability. 1983 WL 31249. The use of SSR 83-20 is predicated on a finding that plaintiff was disabled at some point. There was no finding that plaintiff was disabled at some point. Thus, SSR 83-20 is not applicable in this case. <u>Brown v. Astrue</u>, Case No. 07-1075-MLB, 2008 WL 90070 at *3 (D. Kan. Jan. 2, 2008, Doc. 13 at 7-8).

Plaintiff also asserts that the ALJ erred by failing to consider the six regulatory factors under which a treating physician's opinions are to be judged (Doc. 10 at 11). A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;

16

(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003); 20

C.F.R. § 404.1527.

In the case of Oldham v. Astrue, 509 F.3d 1254, 1258 (10th

Cir. 2007), the court held as follows:

> The ALJ did not violate § 404.1527...That the ALJ did not explicitly discuss all the § 404.1527(d) factors for each of the medical opinions before him does not prevent this court from according his decision meaningful review. Ms. Oldham cites no law, and we have found none, requiring an ALJ's decision to apply expressly each of the six relevant factors in deciding what weight to give a medical opinion. For one thing, as the Commissioner has recognized, "[n]ot every factor for weighing opinion evidence will apply in every case." [citations omitted] The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. See 20 C.F.R. § 404.1527(d)(2). Nothing more was required in this case.

As in Oldham, the ALJ in this case provided good reasons in his

decision for the weight he gave to the opinions of the treating

source.  Nothing more is required.

Plaintiff also argues that the ALJ should have recontacted

Dr. Simmonds in order to resolve any discrepancies or apparent

contradictions in the treating source records (Doc. 10 at 12).

According to 20 C.F.R. § 404.1512(e), there is a duty to

recontact a medical source when the information from the medical

source is inadequate to determine if the claimant is disabled, or

when the report from the medical source contains a conflict or
ambiguity that must be resolved, the report does not contain all
the necessary information, or does not appear to be based on
medically acceptable clinical and laboratory techniques.  20
C.F.R. § 404.1512(e) (2010 at 360).  SSR 96-5p states that if the
ALJ cannot ascertain the basis of the treating source opinion,
the ALJ must make every reasonable effort to recontact the ALJ
for clarification of the reasons for the opinion.  1996 WL 374183
at *6.

It is not the rejection of the treating physician's opinion
that triggers the duty to recontact the physician, rather it is
the inadequacy of the evidence the ALJ receives from the
physician that triggers the duty.  When the ALJ does not find
that the information received from the physician is inadequate
for consideration, but believes that the physician's conclusion
is wrong because it was insufficiently supported by the record as
a whole, there is no duty to recontact.  White v. Barnhart, 287
F.3d 903, 908 (10th Cir. 2002); see Palmer v. Barnhart, 2006 WL
1581004 at *5 (D. Kan. June 6, 2006).

In the case before the court, the ALJ did not indicate that
there were any discrepancies, contradictions, inadequacies,
conflicts, or ambiguities in the treating source records.  The
ALJ did not indicate that the treating source records did not
contain all the necessary information or did not appear to be

based on medically acceptable clinical and laboratory techniques. The ALJ did not indicate that he could not ascertain the basis of the treating source opinion. As in <u>White</u> and <u>Palmer</u>, the ALJ in this case concluded that the finding of Dr. Simmonds were entitled to little weight because they were not consistent with the medical records for the period at issue, and were contradicted by the psychological assessment by Dr. Schulman and Dr. Jessop, who reviewed the medical records and concluded that plaintiff did not meet a listed impairment. Thus, there was no need by the ALJ to recontact Dr. Simmonds.

Finally, the ALJ argues that the ALJ erred by not ordering a consultative examination (Doc. 10 at 13). Consultative medical examinations may be ordered by the ALJ when the information needed is not readily available from medical treatment sources. 20 C.F.R. §§ 404.1512(f). However, in the case before the court, there was information from plaintiff's treating source regarding whether plaintiff met a listed impairment. Furthermore, there was a state agency assessment addressing the very same issue. Because the information on the issue of whether plaintiff's impairment met listed impairment 12.04 was available from two medical sources, there was no need on the facts of this case to order a consultative examination. Although the two assessments in the record were not in agreement regarding whether plaintiff met the listed impairment, that fact alone does not require the

ALJ to order a third assessment on the issue.  The ALJ weighed the evidence and provided a reasonable explanation for his finding that plaintiff's impairment did not meet listed impairment 12.04.

**IV.  Did the ALJ err in his analysis of plaintiff's credibility?**

Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence.  However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.  Kepler v. Chater, 68 F.3d 387, 391 (10ᵗʰ Cir. 1995).  Furthermore, the ALJ cannot ignore evidence favorable to the plaintiff.  Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence.  So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in Kepler.  White v. Barnhart, 287 F.3d 903, 909 (10ᵗʰ Cir. 2002); Qualls v. Apfel, 206 F.3d 1368, 1372 (10ᵗʰ Cir. 2000).  Furthermore, the ALJ need not discuss every relevant factor in evaluating pain testimony.  Bates v. Barnhart, 222 F. Supp.2d 1252, 1260 (D. Kan. 2002).  An ALJ must therefore explain and support with substantial evidence

which part(s) of claimant's testimony he did not believe and why. McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002). It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining that a claimant's complaints were not credible. Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004). On the other hand, an ALJ's credibility determination which does not rest on mere boilerplate language, but which is linked to specific findings of fact fairly derived from the record, will be affirmed by the court. White, 287 F.3d at 909-910.

The ALJ provided a detailed explanation for finding plaintiff not fully credible. He discussed the medical records, and provided reasonable explanations for the weight accorded to that evidence. Plaintiff argues that the ALJ should not have ignored plaintiff's work history. However, the ALJ did mention some aspects of plaintiff's work history, noting that she worked after the alleged onset date, but indicating that the work activity did not rise to the level of substantial gainful activity (R. at 12). The ALJ also noted a medical record, dated January 20, 2006, indicating that she had missed 3 days of work at her restaurant/bar job, but had been able to work at her cosmetology job (R. at 15, 301). First, the court will not reweigh the evidence. Second, the record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not

required to discuss every piece of evidence.  <u>Clifton v. Chater</u>, 79 F.3d 1007, 1009-1010 (10th Cir. 1996).  The court finds that the ALJ has set forth the specific evidence he relied on in evaluating plaintiff's credibility, and that the ALJ's credibility determination is linked to specific findings of fact fairly derived from the record.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to the fourth sentence of 42 U.S.C. § 405(g).

Dated this 24th day of March, 2011, Topeka, Kansas.

<u>s/ Sam A. Crow</u>
Sam A. Crow, U.S. District Senior Judge